IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FORREST LARRY HIXON,

        Plaintiff,                    No. 2:11-cv-00152 KJN

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.               ORDER

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income benefits under Title XVI of the Act.[1] In his motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) giving insufficient weight to the consultative examiner's medical opinion; (2) failing to consider plaintiff's obesity when determining that plaintiff's impairments did not equal a listing at step three; (3) failing to further develop the medical record; (4) rejecting the medical opinions of certain doctors and nurses; (5) issuing a boilerplate credibility finding against plaintiff; and (6)

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301. (Dkt. Nos. 6, 10.)

incorrectly assessing and relying on the vocational expert's ("VE") testimony as to jobs plaintiff could perform. (See generally Pl.'s Mot. For Summ. J. and Memo. In Supp. Of Mot. ("Pl. Memo."), Dkt. No. 17.) Plaintiff asks the court to remand this matter to the agency for payment of benefits or, in the alternative, for further proceedings so that these alleged errors may be addressed. The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 19.) Plaintiff filed a reply brief. (Dkt. No. 22.) For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND[2]

   A.   Procedural History

On May 10, 2006, plaintiff protectively filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits that alleged a disability onset date of August 22, 2004. (Admin. Tr. ("AT") 90-97.) The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AT 68-71.) The ALJ conducted a hearing regarding plaintiff's claim on October 23, 2008. (AT 19-47.) Plaintiff was represented by a non-attorney representative at the hearing. A vocational expert ("VE") also testified at the hearing.

In a written decision dated November 28, 2008, the ALJ denied plaintiff's application for benefits based on a finding that plaintiff could perform other work in the representative occupations of "parking lot cashier," "mail clerk sorter," and "assembly machine tender," which are jobs that exist in significant numbers in the California economy.[3] (AT 18.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 1-4.) Plaintiff subsequently filed this action.

    B.    Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since August 22, 2004, the alleged onset date of plaintiff's disability. (AT 12.) At step two, the ALJ concluded that plaintiff had the following

---

Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

"severe" impairments: "coronary artery disease (CAD), status post PTCA and stenting times two, morbid obesity, and chronic back pain with radiculopathy." (Id.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the applicable regulations. (AT 13.)

Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), alternating standing and sitting every two hours.

(AT 13.) In assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found he was not credible to the extent that his testimony conflicted with the RFC. (AT 14, 16.) At step four, the ALJ found plaintiff was "unable to perform any past relevant work" as an auto parts retail person. (AT 17.) At step five, the ALJ concluded that, considering plaintiff's age, education, work experience, the RFC, and the VE's testimony, plaintiff was not disabled within the meaning of the Act. (Id.) Relying on the VE's testimony, the ALJ determined plaintiff could perform work in the representative occupations of "parking lot cashier," "mail clerk sorter," and "assembly machine tender" and that jobs in those occupations existed in significant numbers in the California economy. (AT 17-18.)

II.   STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at

690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

III.    DISCUSSION

    A.    Dr. Garfinkle's Consultative Examination

Plaintiff first claims the ALJ erred by "Ignoring, Without Explanation" the opinion of consultative examiner Dr. Garfinkle, "who opined that Hixon was more limited than Found by the ALJ."  (Pl. Memo. at 7-8.)  Dr. Garfinkle assessed plaintiff as follows:

> The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently.  He can stand or walk for 6 hours in an 8-hour day.  He can sit for 6 hours in an 8-hour day.  He must periodically alternate standing and sitting every two hours to relive [sic] pain or discomfort.  He can occasionally climb, stoop, kneel, or crouch.

(AT 341.)  Plaintiff attacks the ALJ's treatment of Dr. Garfinkle's consultative examination on four grounds, discussed below, all of which are controverted by the ALJ's written decision.

First, plaintiff cites Social Security Ruling ("SSR") 96-8p, which "provides that the 'RFC assessment must always consider and address medical source opinions,' and in cases

5

where the assessment conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" (Pl. Memo. at 7, quoting SSR 96-8p.) Plaintiff does not expand on this citation, but appears to believe the ALJ did not adopt Dr. Garfinkle's opinion. However, the ALJ expressly discussed Dr. Garfinkle's consultative examination when assessing plaintiff's RFC, and specifically stated the RFC is supported by the consultative examination. (AT 15, 17.) Moreover, the ALJ's hypothetical limitations posed to the VE at plaintiff's hearing were verbatim the limitations set forth in Dr. Garfinkle's report. (AT 38.)

Second, plaintiff notes, without further development of his argument, that "given Dr. Garfinkle's limitation of sit/stand every 2 hours, it is apparent that [plaintiff] would require a sit/stand option and cannot perform the full range of light work." (Pl. Memo. at 7.) This assertion is incorrect because the ALJ expressly included Dr. Garfinkle's sit/stand limitation on plaintiff's ability to perform the full range of light work in plaintiff's RFC. (AT 13.)

Third, plaintiff claims the limitation of occasional stooping set forth by Dr. Garfinkle would also preclude the full range of light work. (Pl. Memo. at 7-8.) Plaintiff then rebuts his own argument by stating "Light work entails occasional stooping," with a supporting citation to SSR 83-10. SSR 83-10 states "The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." Accordingly, Dr. Garfinkle's limitation of occasional stooping, which the ALJ took into account (see AT 38), does not preclude light work.

Finally, plaintiff claims the ALJ failed to acknowledge his "weak grip strength" as a limitation. (Pl. Memo. at 8.) While Dr. Garfinkle noted that plaintiff has a grip strength of 45 kilograms in his right hand and 60 kilograms in his left hand, the doctor did not find that plaintiff had a "weak grip." (See AT 337-41.) Plaintiff supports his assertion that his grip strength is "below average" by citing a sports enthusiast's website that "is all about the top end of sports" and is targeted to "a top sportsperson or professional who works with athletes." (Pl. Memo. at 8.) (See http://www.topendsports.com/index.htm (last visited June 8, 2012).) Plaintiff has not

identified any medical or legal basis for his proposition that his grip strength is inconsistent with the performance of light work.[4]

For all of the forgoing reasons, the plaintiff's assertion that the ALJ erred by "ignoring" the opinion from Dr. Garfinkle's consultative examination fails.[5]

B.   Step Three – Listing Impairment

Plaintiff next argues that the ALJ erred by concluding at step three that plaintiff's impairments did not equal a listing impairment. (Pl. Memo. at 8-18.) In regard to this assertion of error, plaintiff claims the ALJ: (1) failed to consider his obesity; (2) failed to further develop the record by ordering further examinations or testing, or calling a cardiologist medical expert; and (3) improperly rejected and gave "no weight" to the opinions or his treating physicians Dr. Coronado, Dr. Okonski, Dr. Russ, and FNP Dawson. (Id.) For the reasons discussed below, the court finds that substantial evidence supports the ALJ's determination that plaintiff's impairments did not meet or equal a listing impairment.

Plaintiff asserts that he believes he meets or equals Listing 4.03, hypertensive cardiovascular disease. (Pl. Memo. at 9, 16.) Listing 4.03 was removed in January 2006, before plaintiff filed his initial application for disability benefits. (See Federal Register Volume 71, Number 9, at 2318, dated January 13, 2006.) Giving plaintiff the benefit of the doubt, the court considers whether the ALJ erred by not finding that plaintiff's impairments met or equaled Listing 4.02 (Chronic Heart Failure) or Listing 4.04 (Ischemic Heart Disease). Both of these

---

[4] Indeed, although plaintiff's right hand grip strength of 45 kilograms is considered "below average" (meaning at least some professional athletes would have a grip strength of 45 kilograms), his left hand grip strength of 60 kilograms would be considered "very good" for a professional athlete. (See Grip Strength Test Results, available at http://www.topendsports.com/testing/tests/handgrip.htm (last visited June 8, 2012).)

[5] Plaintiff's reply brief takes a 180 degree turn and asserts that the ALJ improperly relied on Dr. Garfinkle's testimony, asserting, inter alia, that the doctor's "failure" to set forth any functional limitations related to plaintiff's grip strength or obesity are evidence that the doctor did not properly conduct his assessment. Plaintiff may not raise this new argument, which is completely contradictory to his initial position, in a reply brief.

listings require that plaintiff suffer the severe symptoms listed therein "while on a regimen of prescribed treatment." (20 C.F.R. pt. 404, subpt. P, app. 1 §§ 4.02, 4.04; see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for . . . benefits.")) There is ample evidence that plaintiff frequently failed to take his prescribed medication and otherwise adhere to his doctors' advice.[6] (AT 255, 273, 330, 375). After plaintiff did begin to take his prescribed medication, however, he "report[ed] feeling good," his physical examinations were "within normal limits" and plaintiff showed improvement in his symptoms and was at times "asymptomatic." (AT 15, 372 , 375, 377.) Accordingly, substantial evidence supports a finding that plaintiff does not meet or equal a listing because plaintiff did not suffer the necessary symptoms "while on a regimen or prescribed treatment."[7]

       C.     Credibility Finding

Next, plaintiff asserts that the ALJ's determination that plaintiff's testimony was not credible was boilerplate and not supported by specific findings. (Pl. Memo. at 18-19.) Plaintiff incorrectly states that the ALJ's finding here was "singularly unhelpful" because "it provide[d] merely that: 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

---

[6] Plaintiff's failure to follow his prescribed course of treatment alone would be ground for finding that he is not disabled. (See 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled.")

[7] As to plaintiff's specific assignments of error, first plaintiff fails to specify how his obesity has caused his cardiovascular limitations to rise to a level of severity to meet a listing and the ALJ correctly found that "treating records did not identify any functional limitations related to [plaintiff's] obesity nor indicated that his obesity was a major contributing factor to back pain." (AT 16.) Second, there is no need for a medical expert or further medical evaluation when the record evidence shows that plaintiff's symptoms improved when he complied with his prescribed treatment. Finally, the ALJ did not "reject" and "give no weight" to the opinions of plaintiff's treating physicians. The ALJ discussed in detail the opinions of Dr. Coronado, Dr. Okonski, Dr. Russ, and FNP Dawson in his opinion and expressly stated that his opinion gave "controlling weight to the SA determinations which are supported by the CE medical opinions, his daily activities, and treating clinical and diagnostic findings." (AT 15-17 (emphasis added).)

above residual functional capacity assessment.'" (Pl. Memo. at 18 (quoting McFerran v. Astrue, 437 F. App'x 634 (10th Cir. 2011)).)  The plaintiff is correct that an ALJ must explain beyond boilerplate an adverse credibility finding.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  Plaintiff's assertion of error fails, however, because the ALJ discussed at great length the numerous reasons he found plaintiff not credible, any one of which could alone support such a finding. (AT 15-17.)  Specifically, the ALJ discussed the following reasons for his adverse credibility finding as to plaintiff:  the record indicated plaintiff had exaggerated his complaints (AT 15-16); the record showed plaintiff had been noncompliant with his medications and continued to smoke against doctor's orders (AT 16, 255, 273, 330, 375); plaintiff's complaints of dysfunction were undermined by the medical source opinions of record (AT 16, 341, 353-58, 394); and plaintiff received only conservative and intermittent treatment for his allegedly disabling back pain (AT 16, 33-34, 202-03, 240-41).  Accordingly, the ALJ's rejection of plaintiff's testimony is supported by substantial evidence and was not error.

### D. Vocational Expert

Finally, plaintiff asserts the ALJ's reliance on the VE testimony was error for three reasons, each discussed below.  At step four of the sequential evaluation process, the ALJ found that plaintiff could not perform his past work as an auto parts retail person. (AT 17.)  At step five, the Commissioner bears the burden of demonstrating that plaintiff can perform "other work" that exists in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).  To meet this burden, the ALJ relied in part on the testimony of the VE to identify the following positions available to plaintiff:

> parking lot cashier, (211.410-010) with 13,000 jobs in California and 200,000 jobs nationally, mail clerk sorter (209.687-026) with 27,000 jobs in California and 150,000 nationally and assembly machine tender (754.685-014) with 16,000 jobs in California and 120,000 nationally.

(AT 17-18.)

////

The entirety of plaintiff's first assertion of error reads: "The VE's statement as to past relevant work [Tr. 17 at 6, 38], accepted by the ALJ, that 222.367-043 was a valid position but no such DOT number exists." (Pl. Memo. at 19.) Plaintiff fails to cite any legal basis for his claim that the VE's error in misclassifying his past work was reversible error. Indeed, the DOT number for plaintiff's past employment is 222.367-042 instead of 222.367-043. However, the VE's misstatement, even if a legal error, was harmless because the ALJ found in plaintiff's favor that he could not perform his past relevant work. (AT 17.)

Second, plaintiff claims the "VE failed to provide regional numbers thus failing to provide substantial evidence that there were a significant number of jobs available to claimant in the regional economy." (Pl. Memo. at 19.) Pursuant to the regulations, work exists "in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country, and one is not disabled if significant work exists *regardless of whether such work exists in the immediate area in which the person lives*, whether a specific job vacancy exists for the person, or whether the person would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2), 1382c(3); 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added). The regulations further explain that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b). Here, the ALJ identified 56,000 positions in the State of California. (AT 18.) Plaintiff does not provide any reason why this court should find that the 56,000 positions in California are either isolated or exist in relatively few locations. See Cruz v. Astrue, 2009 WL 1530157, *10 (E.D. Cal. 2009) (rejecting the proposition that 2,756 jobs in California was not a significant number of jobs). Accordingly, the ALJ's conclusion that the jobs plaintiff could perform existed in significant numbers in the national economy was free of legal error and supported by substantial evidence.

Third, plaintiff asserts that the ALJ failed to "identify and resolve any conflicts between the occupational evidence provided by the VE and the information in the DOT." (Pl.

1. Memo. at 20.) Plaintiff argues the VE's testimony conflicted with the DOT, because the DOT did not indicate whether the jobs had a sit/stand option, and the ALJ was therefore required to explore the conflict before crediting the VE's testimony. Although an ALJ must elicit a reasonable explanation for inconsistencies between the DOT and VE testimony, no such conflict arose here. See SSR 00-4p. Indeed, the VE testified that, although DOT classifications do not address sit/stand limitations, her assessment took into account the sit/stand option. (AT 41.) It was reasonable for the ALJ to conclude that the VE's testimony supplemented, rather than conflicted with, the DOT. See Harvey v. Astrue, 2010 WL 2836817, *14 (N.D. Cal. 2010) ("Where the DOT does not include information about a particular aspect of a job—such as the existence of a sit/stand option—it is proper to consult with a VE, as SSR 83–12 instructs. Such testimony supplements the DOT, rather than conflicting with it.").

For all of the foregoing reasons, the ALJ reliance on the VE's testimony was supported by substantial evidence and without error.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 17) is denied.
2. The Commissioner's cross-motion for summary judgment (Dkt. No. 19) is granted.
3. The Clerk of Court is directed to enter judgment in favor of the Commissioner.

IT IS SO ORDERED.

DATED: June 26, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE